Filed 11/8/13  In re D.R. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.R. et al., Persons Coming Under the Juvenile Court Law. | B248495<br><br>(Los Angeles County<br>Super. Ct. No. CK95369) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARC C.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Veronica McBeth, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Jacklyn K. Louie, Deputy County Counsel for Plaintiff and Respondent.

Appellant Marc C., the alleged father of eight-year-old D.R., appeals the juvenile court's findings and orders with respect to D.R.'s dependency proceedings. Specifically, appellant maintains the juvenile court violated the mandate of rule 5.635 of the California Rules of Court[1] when it denied his request for genetic testing and further contends the court failed to comply with the notice provisions of the Indian Child Welfare Act (ICWA). (25 U.S.C., § 1901 et seq.)

We conclude appellant's oral request for genetic testing at the jurisdiction hearing did not trigger the juvenile court's obligation to determine parentage when an alleged father submits a "Statement Regarding Parentage" form (JV-505), and in any event, any error was harmless. We also determine appellant has no standing to raise an ICWA notice violation. We therefore affirm the orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

D.R., born in 2005, and her half-brother J.R., born in 2007, were the subjects of a Welfare and Institutions Code[2] section 300 petition filed by the Los Angeles County Department of Children and Family Services (DCFS) on September 7, 2012. The petition alleged, among other things, the children were at risk of serious physical harm pursuant to section 300, subdivision (b) due to substance abuse by their mother, R.R. (mother). Mother named appellant as D.R.'s father. Mother indicated she and appellant were not married, registered as domestic partners or living together when D.R. was conceived or born. She maintained appellant was not present at D.R.'s birth, did not sign her birth certificate, had not received her into his home, had not declared his paternity and had never supported the child. Mother also completed a "Parental Notification of Indian Status" form, indicating she may have Apache Indian heritage through her grandmother.

---

[1] All further rule references are to the California Rules of Court.

[2] All further statutory references are to the Welfare and Institutions Code.

At the detention hearing, the juvenile court found appellant to be an alleged father of D.R. The court ordered the children detained, granted visitation to mother and ordered DCFS to investigate mother's claim of Indian heritage.

Appellant was served with notice of the jurisdiction hearing at the Lovelock Correctional Center in Lovelock, Nevada, where he was serving a life sentence, having been convicted in 2008 of murdering a three-year-old child.

On October 22, 2012, counsel was appointed to represent appellant. The jurisdiction hearing was continued to October 25, 2012, at which time DCFS filed an amended petition adding an allegation under section 300, subdivision (f), alleging the "physical abuse and murder of an unrelated child by the father endangers the child's physical health and safety, and places the child at risk of physical harm, damage, danger and death." The court ordered DCFS to notify the parents of the amended petition and continued the hearing to January 17, 2013.

At the continued hearing, appellant's counsel appeared on his behalf stating: "We made a special appearance for the last hearing. [Appellant] is incarcerated in the state of Nevada, and my goal was to make contact with him by way of telephone and he is requesting a DNA test regarding [D.R.]. And obvious[ly] that will require an order for him to be tested at his place of incarceration in Nevada and we would like the opportunity to raise his paternity status at this point. I believe he is just alleged and he would like the opportunity to elevate that status to at least biological." Counsel indicated appellant sought "to elevate his status, including possible placement of [D.R.] with relatives, if he can elevate his status." Appellant also asked to be dismissed from the petition: "The father has in fact never met [D.R.] and he is serving a life sentence, and we don't believe that is a basis to find that [D.R.] is at risk."

D.R.'s counsel requested that the court sustain the petition as pled. She opposed appellant's request for paternity testing and asked that the child remain as placed with her half-brother J.R. and his paternal aunt, as she considered the two children a sibling group who should not be separated.

3

The juvenile court agreed D.R. and J.R. formed a sibling group. The court sustained the petition as to mother based on her substance abuse and failure to protect, and as to appellant based on his conviction for causing the death of a child through abuse. At a subsequent disposition hearing, the court found appellant was not entitled to reunification services pursuant to section 361.5, subdivisions (b)(4) and (e)(1).[3]

## II. DISCUSSION

### A. The juvenile court did not err in declining to order a paternity test

As noted, appellant's counsel orally requested the juvenile court to order genetic testing to determine whether appellant is D.R.'s biological father. Appellant contends the court's denial of his request requires that we reverse and remand this matter with instructions to the juvenile court to make the required determination of his parentage.

Section 316.2, subdivision (b) states, in pertinent part: "If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested

---

[3] Those subdivisions provide, in relevant part, as follows: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (4) That the parent or guardian of the child has caused the death of another child through abuse or neglect. [¶] . . . [¶] "(e)(1) If the parent or guardian is incarcerated, institutionalized, or detained by the United States Department of Homeland Security, or has been deported to his or her country of origin, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in subdivision (a), and any other appropriate factors."

4

alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. Judicial Council form Paternity-Waiver of Rights (JV-505) shall be included with the notice."[4]

Rule 5.635 addresses determination of parentage in juvenile court proceedings. Subsection (e) of the rule provides, in part: "(1) The alleged father and his counsel must complete and submit *Statement Regarding Paternity (Juvenile Dependency)* (form JV-505). . . . [¶] (2) To determine parentage, the juvenile court may order the child and any alleged parents to submit to genetic tests and proceed under Family Code section 7550 et seq. [¶] (3) The court may make its determination of parentage or nonparentage based on the testimony, declarations, or statements of the alleged parents." Subsection (h) of the rule states: "If a person appears at a hearing in [a] dependency matter or at a hearing under section 601 or 602 and requests a judgment of parentage on form JV-505, the court must determine: [¶] (1) Whether that person is the biological parent of the child; and [¶] (2) Whether that person is the presumed parent of the child, if that finding is requested."

Appellant acknowledges he did not submit form JV-505 to the juvenile court. He contends DCFS did not provide him with the form, and indeed, the form does not appear in the record on appeal. He was, however, represented by counsel who was obligated to advise appellant of his legal rights as an alleged father. Appellant made no claim that counsel failed in his responsibilities. In order to obtain a determination of parentage, appellant and his counsel were obliged to timely provide a properly completed form JV-505, or seek additional time to do so. They did neither.[5] The juvenile court was not

---

[4] Judicial Council form JV-505, referred to as a "Statement Regarding Paternity" or "Waiver of Paternity" enables an alleged father to deny paternity, consent to or request blood or DNA testing to determine paternity, request a judgment of paternity, or indicate that paternity has already been established by voluntary declaration or court judgment. (*In re Paul H.* (2003) 111 Cal.App.4th 753, 763-734.)

[5] There are sound reasons to require an alleged father to personally sign a statement requesting a determination of parentage. It is no trifling matter to assert one's

required to make a determination of biological paternity based on an oral request made at the jurisdiction hearing.

Moreover, the outcome of the proceedings would not have been impacted had such a change in status occurred. Appellant does not qualify as a presumed father. He was never married to mother and he readily admits he had never met the child, much less accepted her into his home and provided for her needs. While a biological father who has not established presumed father status may receive reunification services if the juvenile court determines they would be in the child's best interest (§ 361.5, subd. (a)), the court in this case ruled out any such services because of appellant's conviction for murdering a child. And appellant cites no authority for the proposition that a parent has input into the child's placement based on the mere fact that he is the biological father. Thus, any error in failing to determine D.R.'s parentage was harmless.

Appellant relies on *In re B.C.* (2012) 205 Cal.App.4th 1306, to argue that the failure to make a paternity determination when requested in a dependency proceeding is not subject to a harmless error analysis. In that case, the appellate court concluded the juvenile court erred in failing to determine whether the alleged father was the minor's biological father. The court cited with approval the holding of *In re Baby Boy V.* (2006) 140 Cal.App.4th 1108: "[A] juvenile court is required to determine biological paternity of a dependent child if such a determination is requested. 'This is a mandatory, not a discretionary, rule.' (*Id*., at p. 1118; [Citations.])" (*In re B.C., supra,* 205 Cal.App.4th at p.1312.) The court disagreed with the conclusion of *In re Joshua R.* (2002) 104 Cal.App.4th 1030, that "the juvenile court's obligation to determine biological paternity turns on whether the man claiming paternity can demonstrate such a determination would benefit the child." (*Id.* at p. 1314.) However, the *B.C.* court did not hold that because rule 5.635 "is a mandatory, not a discretionary rule," a juvenile court's failure to follow the rule necessarily constitutes reversible error. Nor have we been directed to any other

parentage. In addition, it ensures that a request of such consequence comes from the possible father, and not his counsel.

6

authority which suggests that a harmless error analysis is not applicable to the claimed error in this case.

### B. Appellant has no standing to raise an ICWA notice claim

ICWA provides "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C., § 1912(a).) If the tribe is unknown, the notice must be given to the Bureau of Indian Affairs as the agent for the Secretary of the Interior. (*Ibid.;* 25 C.F.R., § 23.11 (2003); *In re Edward H.* (2002) 100 Cal.App.4th 1, 4.) "'No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the . . . tribe of the [Bureau].' (25 U.S.C., § 1912(a).)" (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707.)

Appellant contends the juvenile court failed to comply with the foregoing notice provisions. He argues: "Failure to comply with the statutory directives constitutes a denial of due process both to the minor and to the tribes. The findings and orders must be voided and the juvenile court must be directed to comply with the notice provisions as required by law."

As an alleged father, appellant has no standing to raise this issue on appeal. (*In re Daniel M., supra,* 110 Cal.App.4th at p. 707.) As explained by the *Daniel M.* court, the juvenile court order "may be challenged on the ground of lack of ICWA notice by the dependent child, a parent or Indian custodian from whose custody the child was removed, and the Indian child's tribe. (25 U.S.C., § 1914; rule 1439(n) [repealed].) The ICWA defines 'parent' as 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom.' (25 U.S.C., § 1903(9).) The ICWA expressly excludes from the definition of

7

'parent' an 'unwed father where paternity has not been acknowledged or established.' (*Ibid.*)" (*In re Daniel M., supra,* 110 Cal.App.4th at pp. 707-708.)[6]

DISPOSITION

The juvenile court's jurisdictional and dispositional findings and orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[6] We note as well that, even had appellant established his biological paternity, he would have no standing to assert error under ICWA, as he is not "a parent . . . from whose custody the child was removed." (25 U.S.C., § 1914.)

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.